Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

FILED

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

Alexandria Division

ISS DIST 10 P 12: 50

CLERK US DISTRICT COURT
ALEXANDRIA VIRGINIA

|  |  |  |
|---|---|---|
| Lisa Garrett<br>420 North Van Dorn Street, #815<br>Alexandria VA 22304 | ) | Case No. ___1:19-CV-579 (TSE/IDD)___ |
|  | ) | *(to be filled in by the Clerk's Office)* |
|  | ) |  |
| *Plaintiff(s)* | ) |  |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | Jury Trial: *(check one)* ✓ Yes ☐ No |
|  | ) |  |
|  | ) |  |
| -v- | ) |  |
|  | ) |  |
|  | ) |  |
| Cape Fox Facilities Services (CFFS): 7050 Infantry Ridge Rd, Manassas, VA 20109 - See Attached | ) |  |
|  | ) |  |
|  | ) |  |
| *Defendant(s)* | ) |  |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) |  |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.   **The Parties to This Complaint**

A.   **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Lisa Garrett |
| Street Address | 420 North Van Dorn Street #815 |
| City and County | Alexandria / Fairfax County |
| State and Zip Code | Virginia  22304 |
| Telephone Number | 202-867-8250 |
| E-mail Address | Garrett18@outlook.com |

B.   **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Defendant No. 1

| | |
|---|---|
| Name | Cape Fox Facilities Services |
| Job or Title *(if known)* | Joseph Hunt |
| Street Address | 7050 Infantry Ridge Road |
| City and County | Manassas, Prince William County |
| State and Zip Code | Virginia 20109 |
| Telephone Number | (703) 686-2320 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Chelsea Brown |
| Job or Title *(if known)* | Program Manager |
| Street Address | 7050 Infantry Ridge Road |
| City and County | Manassas, Prince William County |
| State and Zip Code | Virginia 20109 |
| Telephone Number | (703) 686-2320 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Faye Wells |
| Job or Title *(if known)* | President - Cape Fox Shared Services |
| Street Address | 7050 Infantry Ridge Road |
| City and County | Manassas, Prince William County |
| State and Zip Code | Virginia 20109 |
| Telephone Number | (703) 686-2320 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Harold Mitchell |
| Job or Title *(if known)* | Concentric Methods |
| Street Address | 7050 Infantry Ridge Road |
| City and County | Manassas, Prince William County |
| State and Zip Code | Virginia 20109 |
| Telephone Number | (703) 686-2320 |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

### C.     Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Ronald Reagan Building |
| Street Address | 1300 Pennsylvania Ave NW |
| City and County | Washington, DC 20004 |
| State and Zip Code | Washington, DC 20004 |
| Telephone Number | (202) 759-0074 |

### II.     Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑     Other federal law *(specify the federal law)*:

Pearson v. Chugach Gov't Servs., 669 F. Supp.2d 467, 476 (D. Del. 2009)

☐     Relevant state law *(specify, if known)*:

☐     Relevant city or county law *(specify, if known)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- ☐ Failure to hire me.
- ☐ Termination of my employment.
- ☐ Failure to promote me.
- ☑ Failure to accommodate my disability.
- ☐ Unequal terms and conditions of my employment.
- ☑ Retaliation.
- ☐ Other acts *(specify)*: _____

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

From February 20, 2018 to June 20, 2018

C.   I believe that defendant(s) *(check one)*:
N/A
- ☐ is/are still committing these acts against me.
- ☐ is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- ☑ race _____
- ☐ color _____
- ☑ gender/sex _____
- ☐ religion _____
- ☐ national origin _____
- ☐ age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- ☑ disability or perceived disability *(specify disability)*

Post Traumatic Stress Disorder _____

E.   The facts of my case are as follows. Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Violation of Civil Rights Act of 1964 (race, gender), Americans with Disabilities Act of 1990 (as amended), hostile work environment, and retaliation (see also attached Complaint for Employment Discrimination). This lawsuit is being filed pursuant to receipt of Notice(s) of Right to Sue, dated, March 14, 2019, and March 29, 2019 provided by the Equal Employment Opportunity Commission (EEOC), charge number 570-2019-00476.

1. On February 20, 2018, I began working for Cape Fox/Concentric Methods as an Employee Relations Specialist. It was job to investigate, analyze, and review proposals, grievances, and decisions for ⊞

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV.    Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

November 18, 2019; March 16, 2019 (amended; was not aware I was charging the wrong party). SEE CONTINUATION PAGE

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*    03/29/2019    .

*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V.    Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Plaintiff is seeking monetary relief in the amount of $50,033.69, plus court costs, legal fees, medical, and other allowable damages (monetary or otherwise) deemed suitable by the court.

SEE CONTINUATION PAGE

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.        For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          05/09/2019

Signature of Plaintiff

Printed Name of Plaintiff     Lisa Garrett

**B.        For Attorneys**

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

**III. E. Statement of Claim- Continuation Page**

2. On or about March/April 2018, I communicated concerns to Program Manager, Chelsea Brown that I was being physically affected by toxins in the air in the Ronald Reagan Building (RRB). I was re-located, and when I returned, I continued to suffer from the affects anywhere I moved in the building. As seating was difficult to find in RRB, and our team was both dysfunctional and disconnected from each other, and there were spaces in other building locations in Washington DC that we could come together as a team, and there was consistent talk about moving our team to a different location, I requested a move to a building where the toxins would not affect me. My request was denied.

3. Meanwhile, co-worker, Carene Reid and discussed experiencing individual problems with GS13 Silas York; he did not communicate with me, and would not work with me. We discussed that we believed it was because we are women; Ms. Reid later denied that we had these conversations. Ms. Reid told me that Mr. York was "targeting" her and that he would be coming after me if he managed to get rid of her. Meanwhile, I personally experienced Mr. Yorks' refusal to provide me with information and facts that I needed to write my cases or to do my job, and on several occasions, he spoke down to me telling me something to effect that I was a "little bird" that needed to be "trained" before I could be handed over information to write my cases, and delaying my ability to write cases that were transferred to me. In another instance, during an AFGE union meeting, Mr. York told the attendees that he and I had a "thing".

4. On April 25, 2018, I informed ER Director, Vanessa Prout, of my concerns about Mr. York via iPhone text message. In retaliation against me for my complaints about Mr. York, and after informing her I suffered from PTSD, Ms. Prout began holding my written case drafts and would not review or clear them to the Office of General Counsel (OGC).

5. In Mid-May 2018, before she left USAID, Ms. Prout further retaliated against me when she changed my writing in two written grievances [Brown and Maybrook] and then directing me to send them forward immediately (she specifically told me not to make changes to her changes, thus I was not aware she had changed my writing until it became a reason to target my performance). Meanwhile, I had been communicating my concerns about Mr. York to PM Brown, to include relaying a story Mr. York had told me about a chicken that is left out in the cold and eaten by a wolf. I believed the story was a threat from Mr. York, that if I did not bend to his authority that I would be "left out in the cold." After Ms. Prout departed, DCHCO Price-Detherage, became ER Director, and began working closely with Ms. Reid; subsequently, I was "left out in the cold."

6. Literally moved to the furthest (and coldest) end of the RRB, I was completely isolated from my team, I was not invited into meetings, or conversations, and I communicated to PM Brown that I felt I was being discriminated against because of my race.

7. Like Ms. Prout, Ms. Price-Detherage held my cases and would not review or clear them, and then placed me on a "Peer Review." Previous to my complaints about Mr. York and before meeting Ms. Price-Detherage, I had re-written a grievance for a case (Cook), that I had received praises about, and which had gone forward with few edits. I had also cleared approximately 4-6 cases with Ms. Prout before my complaint about Mr. York.

May 9, 2019

8. Mr. York and Ms. Reid refused to be peer reviewed, so my work was the only work reviewed. Co-worker, Joseph Laster, a former Admin Assistant for Ms. Price-Detherage (and the youngest and most inexperienced on the team), had been brought to the team to support her. Mr. Laster conducted my peer reviews, which resulted in minor grammatical errors expected in an editing process.

9. As her relationships with Ms. Price-Detherage grew, Ms. Reid, knowing I suffered from PTSD, began "gas-lighting" me, telling me that she was being included in high-level meetings with Ms. Price-Detherage and Mr. Walsh and calling me a "liar" about being physically ill; meanwhile I remain isolated from my team.

10. On May 24, 2018, I provided a memorandum for Record to Office of General Counsel (OGC), Jane Ellen Paschall, detailing my concerns and complaining of discrimination in a six-page document. She referred me to the Office of Civil Rights and Diversity (OCRD).

11. On May 29, 2018, I contacted USAID Office of Civil Rights & Diversity (OCRD), Staci Merriweather, informed him I suffered from PTSD and submitted a complaint of race, and gender discrimination, and retaliation. Meanwhile, at work, I was being triggered daily (crying and nightmares), and the stress became unbearable, so I decided to return to the job I had before I accepted a position at USAID.

12. On June 1, 2018, after I complained that I was being blamed for the changes Ms. Prout made in my grievance cases (Brown and Maybrook; my changes were later accepted and forwarded because there was a deadline), Ms. Brown provided me with a "Performance Intervention", email, which I perceived as a written warning, and I began to recognize the disciplinary steps commonly used by managers to terminate an employee.

13. On June 20, 2018, I submitted a two-week notice to PM Chelsea Brown. Ms. Brown told me that she did not want me to return to work or to telework during the two week notice period and offered to pay me for the two weeks, calling it severance pay. I was distraught and sick and was not paying attention when I signed the document. I just wanted to return to my previous job because they had been accommodating my PTSD and I knew I would feel safe working for them (TWD).

14. My allergies to mold have since become extreme and on April 26, 2019, due to similar stressors I am currently experiencing at my current job (hostile work environment and bullying),I was sent to the hospital for PTSD related stress, and am currently recovering from an upper respiratory infection/bronchitis and will return to my current job on May 13, 2019, after being out for two weeks.

15. After leaving Cape Fox, I have left my human resources career for an I.T. career and I have spent approximately $2000.00 so far in preparation for IT certifications. However, PTSD is hindering my ability to focus and concentrate on my new career and my current job. I am seeking help for PTSD through the VA's CBT program at Fort Belvior, VA. I am currently working as an I.T. Data Analyst. The work environment where I am employed now is nearly identical to the hostile work environment (and minority-centric cliques), I had experienced

May 9, 2019

while working for Cape Fox; which is further aggravating my previous medical condition and is beginning to affect my physical health because of the toxins I had breathed while working in the Ronald Reagan building, and PTSD triggers that I have not yet been able to manage successfully since my experience at USAID.////END OF STATEMENT//////////////////

## V. Relief

| Annual Salaries since June 20, 2019 | |
|---|---|
| Cape Fox - $120,000 | $57.69/hr |
| TWD $90,000 | $43.27/hr |
| ASRC Federal | $44.95/hr |

*Estimated Losses in pay since (constructive discharge)*

| Dates | # hours | # work days | Lost wages | Formula |
|---|---|---|---|---|
| July 5 - July 31st | 152 | 19 | $8,768.88 | 152*57.59 |
| August 1 - 15 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| August 16 - 30 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| September 1 - 15 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| September 16 - 30 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| October 1 - 15 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| October 16 - 30 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| November 1 - 15 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| November 16 - 30 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| December 1 - 15 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| December 16 - 31 2018 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| January 1 -15 2019 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| January 1 -28 2019 | 80 | 10 | $1,146.40 | 4608-3461.60 |
| TWD Lost contract | 184 | 23 | $10,598.40 | 184*57.59 |
| March 4 -15 2019 | 80 | 10 | $1,012.00 | 4608-3596.00 |
| March 16 -31 2019 | 80 | 10 | $1,012.00 | 4608-3596.00 |
| April 1 -15 2019 | 80 | 10 | $1,012.00 | 4608-3596.00 |
| April 16 -30 2019 | 80 | 10 | $1,012.00 | 4608-3596.00 |
| Benefits | | | $8,253.61 | |
| Paid Time Off | 80 | 10 | $4,608.00 | |
| TOTALS | 1616 | 212 | $50,033.69 | |

Note1: $4608.00 is the estimated NET weekly salary for Cape Fox. $3461.60 is is the estimated NET weekly salary for TWD. $ 3596.00 is the estimated NET weekly salary for current employer ASRC

Note2: Benefits (Overall, compensation costs among private industry employers in the United States averaged $34.05 per hour worked in December 2018). I calculated a flat 15% for the difference in benefits received and lost.

Note3: To date, I have used paid time off for medical appointments and sick days. It is estimated based on 10 days agreed to in my offer letter.

Note 4: I have not included my medical information as I normally go to the VA for medical treatment and I use my H.S.A for my miscellaneous medical needs; I have not included my on-going medical treatments for respiratory infections and PTSD, but I can provide them at a later date.

Note 5: Additional costs for legal fees, medical, service, copies, etc., deferred to discretion of the court.

No work (July 5 - July 31st)

No work (TWD Lost contract)

May 9, 2019

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA | |
| | ☒ EEOC | 570-2019-00476 |

Prince William County Human Rights Commission and EEOC
*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Lisa Garrett** | **(202) 867-8250** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **420 NORTH VAN DORN STREET, 815, Alexandria, VA 22304** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **CAPE FOX SHARED SERVICES** | **Unknown** | **(703) 686-2358** |

| Street Address | City, State and ZIP Code |
|---|---|
| **7050 Infantry Ridge Road, Manassas, VA 20109** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☒ RACE   ☐ COLOR   ☒ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **02-01-2018**   Latest: **06-20-2018**
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was formerly employed by Respondent. During my employment I complained to management that I was being treated differently because I am female and because I am White. Over the course of my employment Respondent failed to take any actions with regard to my complaints. Finally, on June 20, 2018, due to the continued treatment, I resigned my position. I believe I have been discriminated against due to my sex, my race, and in retaliation for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Nov 23, 2018**        *[signature]*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

10

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___FEPA<br>_X__EEOC | Previous: 570-2019-00476 |

_____and EEOC

*State or local Agency, if any*

| Name (*indicate Mr. Ms. Mrs.*)<br>Lisa Garrett | Home Phone (Incl. Area Code)<br>202-867-8250 | Date of Birth<br>07181961 |
|---|---|---|
| Street Address<br>420 North Van Dorn Street, Alexandria VA 22304 | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name<br>Cape Fox Facilities Services [Concentric Methods subsidiary] | No. Employees, Members<br>120+ | Phone No. (Include Area Code)<br>703.686.2455 |
|---|---|---|
| Street Address<br>7050 Infantry Ridge Road, Manassas, VA 20109 | City, State and ZIP Code | |

| Name<br>USAID \| Office of Civil Rights and Diversity (OCRD) | No. Employees, Members<br>5000+ | Phone No. (Include Area Code)<br>202-712-4727 |
|---|---|---|
| Street Address<br>1300 Pennsylvania Ave NW, Washington, DC 20004 | City, State and ZIP Code<br>Room 5.08C-103, RRB | |

| DISCRIMINATION BASED ON (*Check appropriate box(es).*) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest          Latest |
| __RACE   __COLOR___SEX___RELIGION____NATIONAL ORIGIN | June 20, 2018 |
| X RETALIATION____AGE____DISABILITY    OTHER (Specify below.) | CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

I am a U.S. Army military veteran who suffers from Post-Traumatic Stress Disorder (PTSD); diagnosed in 2017. I informed my employer (verbally and in writing) that I suffer from PTSD. In February 2018, while working on a USAID contract, I began suffering adverse physical effects from breathing toxins at the Ronald Reagan Building where I worked. In early March 2018, I complained to Cape Fox about burning sensations in my body, a metallic taste in my mouth, itchy/watery eyes/skin/hair, and my (upper) throat began to constrict. The company offered to allow me to telework for one day a week, but since the toxins affected me daily, I continued to ask to work in another location, while I wore a face mask to work each day, and was denied a safe working space. I began experiencing PTSD triggers from the stress my body was experiencing from the toxins. Meanwhile, my co-worker (Carene Reid) and I had discussed gender-related issues we were having with government employee, Silas York. Mr. York spoke down to me, would not assist me with old cases that were assigned to me, and would not include me in Union meetings that involved the cases I was assigned (Cook; (I invited myself to this meetings when I heard about it and he dismissed me publicly). I complained to Director Vanessa Prout and Cape Fox Program Manager, Chelsey Brown about the hostile work environment and medical issues I was having and was separated from my team by USAID management; an action I perceived as retaliation for my complaints. I continued to experience a hostile work environment from my peers and USAID management while my physical health continued to fail and my triggers continued. I repeatedly communicated my concerns to my company and USAID management, and when I received no satisfaction, I filed an official complaint with USAID Office of Civil Rights & Diversity (OCRD), Stacy Merriweather. The case is still in review. Meanwhile, my PTSD triggers began affecting my ability to remain with the company. Feeling both racial bias and gender bias within a very hostile work environment, which caused me to trigger daily, I continued to complain to my Program Manager and USAID management, but the hostile work environment continued. Co-worker Carene Reid verbally attacked me daily and called me a "liar"; finally, due to failing health and constant PTSD triggers, and an ongoing hostile work environment, on June 20, 2018, I felt compelled to leave my position. Prior to my departure, I had been placed on weekly telework by my doctor, and I wanted to complete my two-week notice, Chelsey Brown told me that they preferred to pay me for the two weeks and sent me a document to sign. As I was recuperating, and understood that the document was only to accept my last paycheck, I signed the document without hesitation, being under a doctor's care and distraught from being forced to leave my position due to the hostile work environment, I was not aware that I was signing anything more than an acceptance of payment for my last two weeks of work.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct.<br><br>Date March 16. 2019 (Nov 18, 2018) (amended charge) to:<br><br>*[signature]*<br>Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLANANT<br><br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (*month, day, year*) |

# Court opens Alaska Native corporation to suit

Friday, May 4, 2007

An Alaska Native corporation can be sued for allegedly discriminating against its employees, a federal appeals court ruled on Tuesday.

In a unanimous decision, the 4th Circuit Court of Appeals agreed that Congress exempted tribes and Alaska Native corporations from discrimination lawsuits under Title VII of the landmark Civil Rights Act of 1964.

But a three-judge panel said the same protections did not extend to a different federal law that bars discrimination on the basis of race or national origin. The court said Chugach Alaska, an Alaska Native regional corporation, doesn't fall in the same category as tribal governments.

"While the sovereign immunity of Indian tribes 'is a necessary corollary to Indian sovereignty and self-governance,'" Judge J. Harvie Wilkinson wrote in the 19-page opinion. "Alaska Native Corporations and their subsidiaries are not comparable sovereign entities."

https://www.indianz.com/News/2007/002755.asp

**Cape Fox Corporation's Federal Contracting Group (FCG)** consists of six, 8(a) certified businesses that specialize in: information technology, staffing, training, facilities management, construction management, engineering, wholesale, and professional and administrative services to Federal, state, and local government agencies.

**Concentric Methods, LLC (CM)**

Concentric Methods provides Contract, Administrative, Medical, and Logistics support and services to U.S. Armed Forces, Federal Government, and industry customers. Concentric Methods is owned 100% by CFC.

**Cape Fox Federal Integrators (CFFI)**

CFFI was formed in 2010 and offers Federal Agencies innovative and cost effective service solutions within Emerging Technologies and Development and Management of Training Solutions. CFFI is headquartered in Manassas, Virginia. CFFI is owned 100% by CFC.

12

**Cape Fox Professional Services, LLC (CFPS)**

CFPS was formed in 2005 and is involved in information technology, manufacturing, and professional services primarily to the U.S. government. CFPS is headquartered in Manassas, Virginia. CFPS is owned 100% by CFC.

**NAVAR, Inc.(NAVAR)**

NAVAR provides Strategic Solutions including conference planning, graphics, communications, and administrative support; Professional Solutions which supports the client's specific mission critical objectives pertaining to executive and senior leadership, administrative, travel arrangements, financial management, operations and maintenance, and security office operations; and Construction Solutions ranging from new construction, renovations, and construction management services. NAVAR is owned 100% by CFC.

**Cape Fox Facilities Services (CFFS)**

Cape Fox Facilities Services' mission is to clearly understand the strategic objectives of our customers' procurement requests, and then supply solutions to exceed their overall mission requirements. From turnkey Scientific and Technical Support, to value-added Professional and Administrative Support, to complete Logistics Management, striving for open communications and a higher lever of service is the hallmark by which Cape Fox Facilities Services conduct business.

**Eagle Health (EH)**

Eagle Health focus on offering value-driven smart solutions in the Biosafety, Medical, Occupational Health, and Professional Administrative Services. Our Mission is to provide exceptional professional services that Customers and Clients rely upon and trust for adaptable integrated solutions, Employees are proud to work for, and Shareholders recognize for long-term returns. Eagle Health is owned 100% by CFC.

**SaxmanOne (SXO)**

SaxmanOne's mission is to provide timely, innovative and high-quality solutions to Warfighters, Federal agencies and commercial partners. We offer a broad range of experience and expertise, with a robust "reach back" capability in our parent company, Cape Fox Corporation, and it's subsidiaries. SaxmanOne is owned 100% by CFC.

http://www.capefoxcorp.com/our-subsidiaries/

# Key Labor and Employment Issues Affecting Alaska Native Corporations

April 3, 2018
By
Walter T Featherly III

Similar to tribes, Alaska Native Corporations (ANCs) are exempt from the definition of an "employer" under Title VII of the Civil Rights Act of 1964. Alaska Native Claims Settlement Act (ANCSA), 43 U.S.C. § 1626(g) (2012). This exemption applies to ANCSA corporations and related partnerships, joint ventures, trusts, or affiliates in which an ANC owns not less than 25 percent of the equity. *Id.* Congress has made clear that the purpose for exemption of ANCs from Title VII is to allow ANCs to adopt shareholder hiring preferences without facing employment discrimination charges. See Alaska Land Status Technical Corrections Act of 1992, Pub. L. No. 102-415, § 11, 106 Stat. 2112, 2115 (substituting the definition of employer as a means to avoid conflict with the 1964 Civil Rights Act).

Title VII's definition of employer incorporates the ANCSA exemption, which means that ANCs will be similarly exempt from any federal statute that adopts the Title VII definition of employer. For example, the Genetic Information Nondisclosure Act (GINA) explicitly adopts Title VII's definition of employer, ANCs are also exempt from GINA restrictions. 42 U.S.C. § 2000ff(2)(B).

Despite the Title VII exemption, numerous other federal, state, and local laws apply to ANCs and their affiliated entities. For example, Americans with Disabilities Act (ADA) defines employer in terms comparable to Title VII and expressly exempts Indian Tribes from its definition of employer, but it does not expressly incorporate Title VII's definition exempting ANCs. Accordingly, courts have held that ANCs

13

are not exempt from claims under the ADA. *Pearson v. Chugach Gov't Servs.*, 669 F. Supp.2d 467, 476 (D. Del. 2009) (holding that ANCs retain liability under the ADA).

Similarly, the Age Discrimination in Employment Act and the Equal Pay Act do not incorporate the Title VII definition of employer, and they do not exclude or exempt ANCs. *See*, 29 U.S.C. § 630(b) (listing ADEA definition of employer) and § 203(d) (listing Federal Labor Standards Act definition of employer, which governs the Equal Pay Act).

Another statute providing a private cause of action for employees is the Civil Rights Act of 1866, 42 U.S.C. § 1981, which courts have held is a separate statutory basis for prosecuting an employment race discrimination claim. (See *Johnson v. Ry. Express Agency*, 421 U.S. 454, 461 (1975) (holding that remedies under Title VII and the Civil Rights Act of 1866 are "separate, distinct, and independent"). But there is a split of authorities on the question whether the Title VII exemption for ANCs extends to § 1981 claims.

The Tenth Circuit has issued an opinion suggesting that Title VII's express exemption operates to preclude liability from being imposed in any related context. This supports an argument that ANCs are not subject to § 1981. (See *Wardle v. Ute Indian Tribe*, 623 F.2d 670, 672–73 (10th Cir. 1980) (determining that the specific exemption of Indian Tribes from compliance in Title VII control the broad, general civil rights provisions which do not speak to the issue)).

But the Fourth Circuit, on the other hand, held that ANCs are subject to § 1981 claims (See, *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 210–11 (4th Cir. 2007)). That court noted that Title VII limits exclusions to Title VII itself and that § 1981 includes no such exemption for ANCs.

The District of Alaska has agreed with the Fourth Circuit and has refused to read an exemption for ANCs into § 1981 when there is a reasonable explanation as to why a difference may exist as to ANC exemption status under § 1981 as opposed to Title VII. See *Becker v. Kikiktagruk Inupiat Corp.*, No. 3:09-cv-00015-TMB, slip op. at 9–10 (D. Alaska Aug. 12, 2010) (holding that ANCs are not immune from suit under § 1981).

Other federal employment statutes that do not include express exemptions for ANCs and to which ANCs are, therefore, subject, are the Family and Medical Leave Act (FMLA) and the Fair Labor Standards Act (FLSA). Moreover, for ANC companies engaged in federal contracting or receiving federal grants, the contracting provisions or grants typically incorporate a number of federal Equal Employment Opportunity laws and related provisions.

ANCs (and their subsidiaries) are also subject to many state and local laws. For example, as to their employees in Alaska, ANCs are subject to the Alaska Wage and Hour Act (AWHA) and the Alaska Human Rights Act, neither of which excludes ANCs. (Although the Alaska State Commission for Human Rights (ASCHR) does recognize that ANCs are entitled to grant preferences to their shareholders in their employment policies and practices.)

In summary, the patchwork of laws to which ANCs are subject (or to which they are not subject) at the federal, state, and local levels is intricate and complex, requiring ANCs to create, adopt, and follow carefully researched employment policies and procedures that are tailored for each of the jurisdictions in which ANCs have employees. Moreover, due to the frequent changes to the statutes, regulations, and adjudicatory decisions, ANCs much regularly review and revise their policies and standard operating procedures and provide regular training to ensure that the policies and procedures are consistently followed.

14



**Sarah A. Belger, Esq.**
sarah.belger@ofplaw.com
**Direct:** (703)-218-2161

December 21, 2018

**FILED VIA EEOC ELECTRONIC PORTAL**
Equal Employment Opportunity Commission
Attn: Kenneth Morse
131 M St. NE
Washington, DC 20507

> Re:   Position Statement
> Charging Party: Lisa Garrett
> Respondent: Cape Fox Shared Services
> EEOC Charge No.: 570-2019-00476
> EEOC Contact: Kenneth Morse

Dear Mr. Morse:

This firm represents Cape Fox Corporation, an Alaska Native Corporation incorporated under the Alaska Native Claims Settlement Act of 1971, 43 U.S.C. § 1601, *et seq.* ("Cape Fox"). Cape Fox is comprised of a family of businesses which together specialize in information technology, professional services, staffing, construction, wholesaling, property management, hospitality, and manufacturing and assembly. One of the wholly owned subsidiaries, Cape Fox Facility Services ("CFFS"), employed the Charging Party, Lisa Garrett, for approximately five months.[1]

On February 20, 2018, Ms. Garrett began work at CFFS as a Human Resource Specialist in support of the contract that CFFS had with its client, USAID to provide staffing for HR related services.[2] By June 20, 2018, she had resigned and signed a Severance and Release Agreement.[3] As set forth in more detail below, in Ms. Garrett's short tenure, she lodged several complaints with her supervisor Chelsey Brown, and others, ranging from air quality to concerns that one of her fellow employees marched to the beat of his own drum. At all points in time, CFFS went out of its way to appease Ms. Garrett's concerns, even if they were not warranted and not directed at CFFS.

---

[1] As addressed in more detail below, of note, Ms. Garrett did not file her Charge of Discrimination against her employer, CFFS. She filed it against a wholly distinct entity which never employed her, Cape Fox Shared Services. CFFS provides this Position Statement without waiving any argument that Ms. Garrett has filed a Charge of Discrimination against the wrong party.
[2] Exhibit 1, February 2, 2018, Offer Letter.
[3] Exhibit 2, Severance and Release Agreement (to be treated as confidential).

## I.    FACTS

### A. Ms. Garrett Raised Unsubstantiated Mold Concerns.

Less than two weeks after starting at CFFS, Ms. Garrett began complaining that she was suffering possible mold related allergies due to her CFFS workspace.[4] CFFS promptly relocated Ms. Garrett and thoroughly cleaned her workspace area. Upon returning to the original space, Ms. Garrett maintained her concerns so she was permanently moved to a different space, and permitted to telecommute frequently, in order to accommodate her concerns.[5]

Ms. Garrett repeatedly referred to another co-worker, Carene Reid, as having similar issues. However, Ms. Reid reached out to CFFS to clarify that Ms. Reid's symptoms were residual flu symptoms and that she was not similarly affected by the alleged mold issues in the workplace.[6] Ms. Reid also asked that CFFS not take Ms. Garrett's comments with respect to Ms. Reid as true, and expressed concerns that Ms. Garrett was including Ms. Reid in complaints without her knowledge as a means to somehow bolster her argument.[7]

After resigning from CFFS, Ms. Garrett filed a complaint with OSHA regarding the workspace. USAID arranged a full investigation from Federal Occupational Health ("FOH"), and obtained a report confirming that the air quality was not impacted in the areas in question.[8]

### B. Ms. Garrett Took Offense to Suggested Redlined Edits.

Ms. Garrett never informed Ms. Brown – either by conversation or in writing – about any complaints of discrimination or retaliation by a CFFS employee. Ms. Garrett did lodge complaints about two USAID employees: Silas York and Maria Price-Detherage. As stated by Ms. Garrett, "I have had no problems that I haven't been able to correct with anyone I have been associated with since I have been at USAID, except for Silas and Maria."[9]

Ms. Garrett's complaint with respect to Maria Price-Detherage related to Ms. Price-Detherage editing Ms. Garrett's work product. When Ms. Garrett was hired, the Director of USAID was Vanessa Prout. Ms. Prout, among other job duties, edited Ms. Garrett's work. When Ms. Prout resigned from USAID in early May 2018, Ms. Price-Detherage served as Acting Director until Frank Walsh was appointed, and thus edited Ms. Garrett's work. In May 2018, Ms. Garrett submitted her work product to Ms. Price-Detherage, Acting Director, which Ms. Garrett claims included some of Ms. Prout's prior edits. Ms. Price-Detherage requested further revisions due to incomplete sentences and typographical errors. Ms. Price-Detherage was disappointed with grammatical errors and mistakes made that she would not expect from an employee with

---

[4] Exhibit 3, June 6, 2018, email between Ms. Reid and Ms. Brown; Exhibit 4, April 4, 2018, email between Ms. Garrett and Ms. Brown.
[5] *Id.*
[6] Exhibit 3.
[7] *Id.*
[8] Exhibit 5, FOA Report.
[9] Exhibit 6, May 30, 2018, email between Ms. Garrett and Ms. Brown.

Ms. Garrett's experience.[10] Upon receipt of suggested edits, Ms. Garrett was upset by the constructive criticism of a superior at USAID and pushed back on any suggested edit. At one point, Ms. Price-Detherage rewrote a draft of Ms. Garrett's herself to avoid the prolonged push back and contentious behavior of Ms. Garrett.

Ms. Price-Detherage met with Ms. Brown in late May 2018 and on June 1, 2018, Ms. Brown discussed Ms. Price-Detherage's concerns. Ms. Brown documented the conversation by a June 1, 2018, email.[11] Ms. Garrett responded on June 3, 2018, defensive of any criticism, still pushing blame on Ms. Price-Detherage, and raising excuses as to why her work required revisions.[12]

### C. Ms. Garrett Felt a USAID Employee Did Not Assist Her and Was Not Friendly to Her.

Another complaint voiced by Ms. Garrett related to USAID direct hire, Silas York. On April 26, 2018, Ms. Garrett forwarded Ms. Brown a seven-page Statement regarding the Employee – Labor Relations (ELR) Team.[13] The bulk of this Statement alleges that Mr. York was not helpful or supportive to Ms. Garrett. Ms. Garrett alleged that when Ms. Prout was absent, Mr. York was to step in her role and run the team, but that she never received "the help I needed from Silas [York] when I have asked for his assistance."[14] Ms. Garrett stated that "he walks around a lot, goes to a lot of meetings, talks to a lot of people, but, aside from settlement agreements (which are generally templates) and discussions with AFSA-AFGE regarding position descriptions and work planning, I have never seen any work or by products of work that he has developed when it comes to cases and workloads I have been working."[15] Ms. Garrett also informed Ms. Brown of alleged issues Ms. Reid had with Mr. York but Ms. Reid denied the claims and stated that she was "thoroughly disgusted that [Ms. Garrett] has the audacity to feel it is her place to bring my 'alleged' concerns to anyone's attention."[16]

Lastly, Ms. Garrett complained that Mr. York told her that she only got her job because he supported her and that he told a story about a chicken who was left alone in the road and ultimately was eaten by a wolf.[17] Ms. Garrett asserted that Mr. York seems to march "to the beat of his own drum" and ultimately, was not helpful to her in her role.[18] On May 25, 2018, Ms. Garrett wrote to general counsel at USAID, Jane Ellen M. Paschall, to lodge a complaint against USAID employee, Mr. York for gender discrimination.[19] Ms. Garrett also accused Ms. Price-

---

[10] Exhibit 7, May 29, 2018, email between Ms. Garrett and Ms. Brown (forwarding an email between Ms. Garrett and Ms. Price-Detherage).
[11] Exhibit 8, June 3, 2018, email between Ms. Brown and Ms. Garrett (which includes the June 1, 2018, email referenced above).
[12] *Id.*
[13] Exhibit 9, April 26, 2018, email between Ms. Garrett and Ms. Brown.
[14] *Id.*, pg. 1.
[15] *Id.*, pg. 4.
[16] Exhibit 3.
[17] Exhibit 9, pgs. 5-6.
[18] *Id.*, pg. 5.
[19] Exhibit 10, May 25, 2018, email from Ms. Garrett to Ms. Paschall.

3

Detherage of taking issue with her race and favoring another male employee to her.[20] Upon learning of Ms. Garrett's complaints, CFFS promptly notified the appropriate management at USAID.

### D. Ms. Garrett Resigned.

On June 20, 2018, Ms. Garrett informed Ms. Brown that she was resigning.[21] Ms. Brown informed Ms. Garrett that she would keep her in positive standing and offered a two week severance package.[22] On June 30, 2018, Ms. Garrett executed a Severance and Release Agreement.[23]

### E. Ms. Garrett Filed a Charge of Discrimination.

On November 23, 2018, Ms. Garrett filed a Charge of Discrimination claiming racial and sexual discrimination as a white female. She also claims that she was retaliated against for engaging in protected activity. Ms. Garrett's five sentence statement does not allege what protected activity she claims to have engaged in, it does not allege what individuals she claimed discriminated against her, and lacks any detail or support of such claims.

As set forth below, any Charge of Discrimination against CFFS, or Cape Fox Shared Services, should be dismissed. Ms. Garrett provides no evidence whatsoever that she was discriminated against or retaliated against. Moreover, even taking her allegations as true, her complaints are not with CFFS, or any Cape Fox entity. Her complaints, which do not constitute claims under Title VII, are with USAID. Accordingly, the Charge of Discrimination should be dismissed.

## II.    ANALYSIS

### A. CFFS is Committed to Preventing Discrimination and Retaliation.

CFFS is a wholly-owned subsidiary of Cape Fox, an Alaska Native Corporation incorporated under the Alaska Native Claims Settlement Act of 1971, 43 U.S.C. § 1601, *et seq.* Like Cape Fox, CFFS is committed to providing equal employment and advancement opportunities to all individuals based on merit, qualifications, and abilities. Cape Fox and its wholly owned subsidiary CFFS maintain and enforce policies that expressly prohibit and address unlawful discrimination and harassment. CFFS's equal employment opportunity and anti-harassment policies as of the relevant dates in the Charge are attached.[24]

---

[20] *Id.*

[21] Exhibit 11, June 20, 2018, emails from Ms. Garrett.

[22] *Id.*

[23] Exhibit 2.

[24] Please find attached the Cape Fox Corporation Employee Guidebook as Exhibit 12 (to be treated as confidential).

**B. The Charge of Discrimination is filed against Cape Fox Shared Services – an Entity which did not employ Ms. Garrett.**

In February 2018, CFFS offered Ms. Garrett a position as the Human Resource Specialist in support of the USAID contract in Washington, DC. Ms. Garrett signed the offer letter, accepted the position, and began work as a CFFS employee on February 20, 2018.[25]

CFFS is a wholly-owned subsidiary of Cape Fox. Cape Fox Shared Services is an entirely different corporation entity which did not employ Ms. Garrett. The only tenuous connection is that Cape Fox Shared Services is also a wholly-owned subsidiary of Cape Fox.

Thus, in addition to the multitude of reasons addressed herein, Ms. Garrett's Charge of Discrimination should be dismissed because it was not filed against her employer. Instead it was filed against an entirely different legal entity which did not employ her. Of course, a valid Title VII claim is premised prohibiting *employers* from discriminating against *employees*, save for a few additional scenarios which are not present here. Because Ms. Garrett cannot show any employment relationship or relationship subject to Title VII protection between her and Cape Fox Shared Services, the Charge of Discrimination should be dismissed.

**C. Even if the Charge of Discrimination is read to be filed against CFFS, it is Exempt from Title VII Claims.**

As an Alaska Native Corporation, Cape Fox and many of its subsidiaries are exempt from federal antidiscrimination laws such as Title VII of the Civil Rights Act of 1964. According to 43 U.S.C. § 1626(g), "[f]or the purposes of implementation of the Civil Rights Act of 1964 [42 U.S.C. 2000a et seq.], a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity shall be within the class of entities excluded from the definition of "employer" by section 701(b)(1) of Public Law 88–352 (78 Stat. 253), as amended [42 U.S.C. 2000e(b)(1)], or successor statutes." As such, Cape Fox and its subsidiaries, including CFFS and Cape Fox Shared Services, cannot be considered an employer to support a Title VII claim and the Charge for Discrimination should be dismissed.

**D. Ms. Garrett Did Not Suffer an Adverse Employment Action.**

A required predicate for the Title VII claims that Ms. Garrett attempts to raise is that she must show that she suffered an adverse employment action – a predicate she cannot show.

Section 2000e-2(a) of Title VII makes it unlawful for an employer to, *inter alia*, discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individuals race, color, religion, sex or national origin. To establish a prima facie case for discrimination, Ms. Garrett must show that: (1) she is a member of a protected class; (2) she had a satisfactory job performance; (3) she suffered an **adverse employment action**; and (4) she suffered different treatment from similarly situated

---

[25] Exhibit 1.

5

employees outside the protected class. *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (affirming the District Court's order granting a motion to dismiss and finding that the employer failed to state a claim for discrimination and or retaliation under Title VII).

Section 2000e-3(a) of Title VII makes it unlawful for an employer to retaliate against an employee because she has participated in any investigation or proceeding or because she has opposed the employer's discriminatory practices. To establish a prima facie case for retaliation, Ms. Garrett must show that (1) she engaged in protected activity; (2) **an adverse employment action was taken against her**; and (3) there was a causal link between the protected activity and the adverse employment action. *Id.* at 191.

Adverse employment actions include retaliatory acts or harassment if that act or harassment "results in an adverse effect on the terms, conditions, or benefits of employment." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F. 3d 180, 188 (4th Cir. 2004). Mere lack of communications or being ostracized by certain employees does not rise to the level of an adverse employment action. *Id.* at 189. Put another way, an employee's "voluntary resignation does not, as a matter of law, constitute an adverse employment action" under Title VII. *High v. R&R Transportation, Inc.*, 242 F.Supp.3d. 433, 446 (2017) (citing *Honor*, 383 F. 3d at 186 (4th Cir. 2004) (holding that retaliation and wrongful termination claims could not proceed because a reasonable jury could find that [plaintiff] voluntarily resigned his employment")).

Ms. Garrett was not terminated. She did not receive a discharge, demotion, or decrease in pay or benefits. She did not switch jobs or job titles and did not lose supervisory responsibility or reduced opportunities for promotion. Instead, Ms. Garrett received open ears, compassion, and diligence from CFFS. She has suffered no adverse employment action and as such, there can be no claim under Title VII.

### E.   CFFS Never Discriminated Against Ms. Garrett, as She Has Acknowledged.

Ms. Garrett began her position with CFFS on February 20, 2018. Per her offer letter, her supervisor and the person she reported directly to was Chelsey Brown, Program Manager at CFFS. She reported to Ms. Brown frequently with concerns as addressed above. However, at no point in time, did she ever inform Ms. Brown – either by conversation or in writing – about any complaints of discrimination or retaliation by a CFFS employee. Ms. Garrett's complaints were never about CFFS (or Cape Fox Shared Services) employees. In fact, she often repeated that "I don't blame Cape Fox for what is happening."[26] Instead, she was effusively grateful to Ms. Brown for her open ears and patience with Ms. Garrett.

The attachments submitted with this Position Statement make clear that Ms. Garrett's sole complaints were with non CFFS employees and do not rise to a level of discrimination or retaliation. Constructive criticism from a superior at USAID to avoid grammatical errors or being told to inspect a shared drive for documents instead of pointing out specific documents, cannot be the basis of a Title VII claim. *See, e.g., Coleman*, 626 F.3d at 190 (affirming the District Court's order granting a motion to dismiss and finding that the complaint failed to establish a

---

[26] Exhibit 6.

6

plausible basis for believing that race what the true basis of the adverse employment action, noting that the allegations of race discrimination did not rise above speculation).

### F.  Ms. Garrett Executed a Severance Agreement.

Consistent with her repeated statements to Ms. Brown that CFFS was not in the wrong and had been extremely supportive throughout her employment, Ms. Garrett executed a Severance and Release Agreement ("Release"), where she waived, *inter alia*, all claims for monetary damages and any other form of personal relief through or resulting from any charge or complaint arising before the June 30, 2018, Release.[27] Read in conjunction with her own admissions in the attachments, it is clear that Ms. Garrett

### III.    CONCLUSION

For the reasons stated above, the Charge is without merit and should be dismissed without further consideration. Please do not hesitate to contact me if you have any questions or need any further information.

Sincerely,

Sarah A. Belger, Esq.

cc:    Margaret M. Marks, Esq. (*via electronic mail only*)
       Faye Wells (*via electronic mail only*)
       Chelsea Brown (*via electronic mail only*)

Enclosures

---

[27] Exhibit 2.

7



## OFFICE OF CIVIL RIGHTS AND DIVERSITY
### *NOTICE OF RIGHT TO FILE A FORMAL COMPLAINT OF DISCRIMINATION*

| DATE: | TO: (AGGRIEVED) | FROM: (EEO COUNSELOR) |
|---|---|---|
| August 15, 2018 | Lisa Garrett | Deborah Davis |

This Notice of Right to File a Formal Complaint of Discrimination (Notice) is to inform you that I have concluded my inquiry into your allegations of discrimination.  During this counseling period, the following allegations were brought to my attention, in my role as your EEO counselor.  *A more detailed description of your allegations will be included in the EEO Counselor's Report, a copy of which you will be provided by the Office of Civil Rights and Diversity (OCRD), should you file a formal complaint.*

PRECISE DESCRIPTION OF THE ISSUE(S) COUNSELED *(Framed claim to include **ALL** basis, issue, and date on which everything occurred.)*

On June 17, 2018, Lisa Garrett (Aggrieved Person/AP) contacted the USAID EEO Office to initiate an informal EEO Complaint.  AP alleges that on or about April 4, 2018 – June 20, 2018, she was subjected to discrimination and hostile work environment, because of her sex (female), disability (physical-sensitivity to toxins in the environment believed to be allergens to mold spores, PTSD/MST), and perceptions of racial bias, when:

Issue #1: On April 4, 2018, AP submitted medical note to Ms. Vanessa Prout, Director, Employee and Labor Relations (ELR), and Cape Fox Program Manager, Chelsey Brown from office visit, that she was being affected by toxins believed to be mold in the office.  She was moved twice, but management failed to address or act on her concerns that the toxins were affecting her health.

Issue #2: On April 19, 2018, AP notified Ms. Prout, that she (AP) was subjected to a hostile work environment when a co-worker (Silas York) who was acting for Ms. Prout, told her that "a chicken being left out in the cold and eaten by a wolf," which AP felt was him telling her that if she was not submissive she would be left out in the cold and eaten up by the wolves (men) in the office.

Issue #3: Between April 25 and May 15, 2018, Ms. Prout held up AP's written case drafts making AP appear unproductive.

Issue #4: On or about May 10, 2018, Ms. Prout, Director, ELR, significantly changed two grievances written by AP further subjecting AP future work and writing abilities to excessive scrutiny by HR-ELR and the Office of General Counsel personnel.

Issue #5: On May 21, 2018, co-worker (Silas York), who sometimes acted for Ms. Prout, did not properly introduce AP to participants at a meeting, while introducing everyone else in the room and after being corrected by a union representative who was attending the meeting, Mr. York allegedly told the participants the he and AP had a "thing."

Issue #6: On May 23, 2018, AP was informed by the Acting ELR Director (after Ms. Prout), Maria Price Detherage, that her (AP's) work was to be "peer reviewed" before it was sent forward for legal review.

Issue #7: On May 24, 2018, Ms. Price Detherage, Acting Director, ELR, stated in a meeting with AP that she would be making "significant changes." When AP asked if she should start looking for a new job, Ms. Price Detherage allegedly stated, "Like I said, I'm shaking things up", which made AP fear losing her job. AP informed Price Detherage in an email that she felt that she was being discriminated against (race), and received no response. Subsequent to her complaint, Mr. Frank Walsh became Acting ELR Director.

Issue #8: On May 25, 2018, AP took all the prior issues and concerns (allergies to toxins believed to be mold, PTSD, etc.,) that she had raised to management to OGC attorney Jane Ellen Pascal, informing her that AP was a veteran suffering from PTSD, which was being exacerbated by the unsafe/unhealthy work

USAID Notice of Right to File

22

environment.

Issue #9: On June 1, 2018, Ms. Price Detherage coordinated an email with AP's contract company to send an email for "intervention counseling" based on AP's complaints of retaliation.

Issue #10: On June 1, 2018, AP asked Mr. Frank Walsh for more assignments and let him know that she (AP) was concerned about feeling isolated from the team, and was told she would be working with LeMont Neal, on the Executive Orders released May 25, 2018. Mr. Neal was not a member of the ELR team.

Issue #11: AP was placed on a five-day telework schedule by her physician due to acute allergies that was affecting her health since she began working at the Ronald Reagan Building. She requested a reasonable accommodation to work in another building since she was already isolated from her team, she was denied this accommodation.

Issue #12: On June 13, 2018, Mr. Frank Walsh informed AP she needed to provide him a list of items she would work on while on telework, prior to this directive, there was no requirement for teleworkers to document work assignments during telework; AP believed this was in retaliation for her complaints.

Because the matter, cited above, has not been resolved, you are now entitled to file a formal discrimination complaint.

If you decide to file a formal complaint, it must be submitted in writing and preferably on the attached Formal Discrimination Complaint Form **within fifteen (15) calendar days** after you receive this Notice.

You may file your complaint in person, by fax, mail, or email to the following EEO official authorized to receive formal discrimination complaints:

> Director
> USAID, Office of Civil Rights and Diversity
> Ronald Reagan Bldg., Room. 5.08C
> Washington, DC 20523-4100
> Fax: 202-216-3906
> OCRDmailbox@usaid.gov

**You may NOT submit your Formal Complaint to me (the EEO Counselor), as I am not authorized to receive it on behalf of OCRD.**

Your complaint must be specific and be limited to only those matters that you have discussed with me or are claim(s) that are like or related to the issues discussed. You must also state if you have filed a grievance under a negotiated grievance procedure or have an appeal before the Merit Systems Protection Board (MSPB) on the same claims.

If you retain an attorney or representative, you must immediately notice the Director of OCRD in writing of the name, address, and telephone number of the individual. You can do this via the Designation of Representation form which I have attached.

You and/or your representative will receive written notification of receipt of your formal complaint by OCRD. In addition, you must keep the Director of OCRD informed of your current address and telephone number. Failure to do so could result in the dismissal of your complaint.

Attachments: 1. Formal Discrimination Complaint Form; 2. Designation of Representation Form

Please sign below to acknowledge that you have read and received this form.

NAME OF THE AGGRIEVED PERSON:

Lisa Garrett

| SIGNATURE OF THE AGGRIEVED PERSON: | DATE: |
|---|---|
| Lisa Garrett  *Digitally signed by Lisa Garrett. DN: cn=Lisa Garrett, o=Vero Integritas Global Inc, ou=Chief Executive Officer, email=lisa.garrett@verointegritas.com, c=US Date: 2018.08.16 22:40:45 -04'00'* | August 16, 2018 |

USAID Notice of Right to File

23

Note: I was still being affected by my PTSD triggers and was not aware that Cape Fox PM Chelsey Brown considered my last two weeks' pay (for which I had submitted a two-week notice, and was willing to work from home to complete). I was not otherwise compensated and was told that Cape Fox did not want me to work the two weeks.

**Chelsey Brown <cbrown@capefox-fs.com>**
Wed 6/20/2018 11:15 AM
Hi Lisa,

Thank you for sending the written confirmation. I have forwarded your resignation to HR with a note stating that today will be your last day of work and requesting the two week severance package. As discussed, Cape Fox will keep you in a positive standing and can be used as a reference.

Any unused PTO will be paid out to you. Your last paycheck will be 7/7/18 and your PTO will be paid out on 7/22/18 to ensure all accruals are accounted for, including for the last pay period.

Please complete and sign your timesheet today. I will still need your on-site supervisor's concurrence so please take care of that as soon as possible.

I will be sending you a Fed Ex envelope with a return label and envelope so you can return your badge and RSA token. You should receive it by tomorrow evening so please make sure you drop it off at Fed Ex so I can have it no later than Monday.

Also, since you have a clearance, I will be sending you security debriefing paperwork in a separate email.

Please let me know if you have any other questions.

Chelsey Brown
Program Manager | Facility Security Officer

Concentric Methods | Cape Fox Facilities Services 7050 Infantry Ridge Road, Manassas, VA 20109

24

**From:** Lisa Garrett [mailto:garrett18@outlook.com]
**Sent:** Wednesday, June 20, 2018 10:23 AM  **To:** Chelsey Brown <cbrown@capefox-fs.com>
**Subject:** RE: Resignation from USAID

Good morning, Chelsey

Based on our conversation this morning, I have accepted new employment and I am providing a two week notice, effective today.  Per our discussion this morning you will be working on a solution that will compensate me for a two week period as a severance packet so the client does not have to track my telework or accommodate me in a different location because of my severe allergies, for the remainder  of my notice period.  We had also discussed my ability to use Cape Fox as a positive reference for future opportunities, and you have confirmed that I am in a positive rehire status, so if you have need of my services, again, please feel free to keep me in mind.

I thank you for allowing me to provide services to your client, and  thank you, again for your assistance.  Best regards,
  Lisa Garrett

25