# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

LISA GARRETT
    **Plaintiff,**

     v.                  **Civil Action No. 1:19-cv-579**

CAPE FOX FACILITIES SERVS.,
*et al.,*
    **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on a motion to dismiss by Defendant Cape Fox Facilities Services ("CFFS") and the individual defendants Chelsey Brown,[1] Faye Wells, and Harold Mitchell (collectively, the "Individual Defendants"). Defendants seek to dismiss for failure to state a claim *pro se* Plaintiff Lisa Garrett's complaint, which alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA"). Plaintiff filed an opposition to defendants' motion and the matter is thus ripe for disposition. The parties waived oral argument, and, in any event, oral argument is dispensed with as the facts and legal contentions are adequately set forth in the existing record.

Plaintiff now concedes that her claims against the Individual Defendants must be dismissed. Although Defendants argue that plaintiff signed a Severance and Release Agreement ("Release"), that argument is not reached here because whether plaintiff

---

[1] Defendants note that defendant Brown was named in the complaint as Chelsea Brown, but her correct legal name is Chelsey Brown.

executed the release is an affirmative defense not properly considered on a threshold motion to dismiss. The complaint must be dismissed in its entirety, however, because plaintiff has failed to state a claim under Title VII or the ADA. Accordingly, the motion to dismiss must be granted in part and denied in part. The motion is denied insofar as defendants sought to dismiss on the basis of the Release and insofar as defendants sought dismissal with prejudice on the claims against CFFS; the motion is granted in all other respects with leave to amend the claims against CFFS.

## I.

As settled precedent requires, the following facts are derived from the allegations in the complaint and the attached documents, which are taken as true solely for the purpose of resolving the motion to dismiss. *See Papasan v. Allain*, 478 U.S. 265, 283 (1986).[2]

- Plaintiff is a white, female, military veteran who was diagnosed with post-traumatic stress disorder ("PTSD") in 2017.
- On February 20, 2018, plaintiff was employed by CFFS as an Employee Relations Specialist on staffing assignment with CFFS' client, USAID.[3]
- Plaintiff's job was to investigate, analyze, and review proposals and grievances apparently by USAID employees.
- On or about March or April 2018, plaintiff communicated to Brown, a CFFS program manager, concerns that toxins in the air in the building where she was assigned to work were adversely affecting her.

---

[2] Documents attached to a complaint are reviewable on a motion to dismiss. *See, e.g., Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). Documents attached to plaintiff's opposition to the motion to dismiss, however, are not properly reviewed in deciding the motion. *See Braun v. Maynard*, 652 F.3d 557, 559 (4th Cir. 2011) (explaining that generally courts "do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6)").

[3] *See* EEOC Form 5, Charge of Discrimination, Dkt. 1, at 11.

- To accommodate plaintiff, CFFS then assigned plaintiff to a different workspace in the same building and permitted her to work from home one day a week.

- Plaintiff then requested to move herself and her team to an entirely different building.

- CFFS denied her request.

- Plaintiff experienced difficulties with USAID employee Silas York who refused to communicate with plaintiff regarding plaintiff's work or to provide plaintiff with necessary information to perform her job.

- Plaintiff discussed these issues with her co-worker, Carene Reid, who agreed with plaintiff that York refused to communicate with plaintiff and Reid because they are women. The complaint alleges that Reid later denied having these conversations.

- The complaint alleges that York told plaintiff that she was a "little bird" that needed to be trained and told others that he and plaintiff had a "thing."

- On April 25, 2018, plaintiff complained to USAID Director Vanessa Prout about York and informed Prout about her PTSD.

- Prout then began holding plaintiff's case drafts and would not clear them to be submitted to the Office of General Counsel.

- In mid-May 2018, Prout made edits to plaintiff's case drafts.

- Plaintiff complained to Brown about York, including a story York told plaintiff involving a chicken being eaten by a wolf that plaintiff viewed as a threat to her.

- Plaintiff felt that she was placed at the furthest end of the building and isolated from her team.

- Plaintiff complained to Brown that she felt she was being discriminated against based on her race.[4]

- A new USAID Director, Maria Price-Detherage, replaced Prout, but also held plaintiff's cases back from being submitted to the Office of General Counsel, refused to review them, and placed plaintiff on "Peer Review."[5] Plaintiff's work was the only work that was peer reviewed.

---

[4] Plaintiff does not identify the races of any persons other than herself or explain what facts prompted her to conclude that she was the victim of race discrimination. Plaintiff does allege that her work environment included "minority-centric cliques."

[5] Presumably peer review means that plaintiff was required to have her work reviewed by her co-workers before submitting it to Price-Detherage or the Office of General Counsel.

- Before complaining to Prout regarding York, plaintiff did not experience difficulty having her work submitted to the Office of General Counsel and between 4-6 cases had been cleared to that Office.

- Reid, who also knew that plaintiff suffered from PTSD, began "gas lighting"[6] plaintiff by informing plaintiff that Reid was included in high-level meetings and calling plaintiff a liar about being physically ill.

- On May 24, 2018, plaintiff complained to USAID's General Counsel, Jane Ellen Paschall, who referred plaintiff to USAID's Office of Civil Rights and Diversity ("OCRD").

- On May 29, 2018, plaintiff contacted OCRD and submitted a complaint of race and sex discrimination and retaliation.

- At the same time, because plaintiff suffered several PTSD triggers at her work and because she experienced a lot of stress at work, plaintiff decided to resign.

- On June 1, 2018, sometime after plaintiff complained about edits Prout made to her grievance cases, Brown provided plaintiff with a "performance intervention" email, which plaintiff perceived as a written warning and an effort to begin the termination process.

- On June 20, 2018, plaintiff submitted her two-weeks' notice to Brown, which CFFS accepted.

- CFFS offered plaintiff two weeks' severance pay in exchange for a general release.

- Plaintiff signed the release but alleges that she was sick at the time and was not paying attention to the document that she signed.

- On November 23, 2018, plaintiff filed her EEOC charge of discrimination.

- On March 29, 2019, the EEOC issued plaintiff a right to sue letter.

## II.

The well-settled motion to dismiss standard does not require extensive elaboration. As the Supreme Court has made clear, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

---

[6] Gaslighting is a term derived from the 1944 film *Gaslight* and refers a kind of psychological abuse in which a person denies another person's reality and causes that person to question himself or herself and his or her perceptions.

Importantly, in making this determination, a district court must "accept as true all well-pled facts in the complaint and construe them in the light most favorable to [the plaintiff]." *United States v. Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). But a district court is not bound to "accept as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014). Additionally, the Fourth Circuit has recognized that, "as a general rule[,] extrinsic evidence should not be considered at the 12(b)(6) stage." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

### III.

Although the complaint asserts claims against the Individual Defendants in their individual capacities, plaintiff now correctly agrees to the dismissal of this aspect of the complaint. This is correct because Title VII and the ADA do not afford plaintiff such relief. *See Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) ("these statutes do not provide for causes of action against defendants in their individual capacities"); *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (holding that Title VII and the ADA do not provide for actions against individual defendants). In her opposition brief, plaintiff states that she withdraws her complaint against the Individual Defendants. *See* Opp'n Br. at 3. Accordingly, the motion to dismiss with respect to the Individual Defendants must be granted and the claims against the Individual Defendants must be dismissed with prejudice.

## IV.

Next, CFFS seeks dismissal of the entire complaint on the basis of the allegation in the complaint, that plaintiff signed a Release. Although plaintiff concedes that in exchange for two-weeks severance pay she signed a release of claims, it is premature to consider the release on a motion to dismiss. Accordingly, the motion to dismiss must be denied in this regard.

Documents referenced in the complaint and attached to a motion to dismiss may be considered when evaluating a motion to dismiss if they are "integral to and explicitly relied on in the complaint," *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Ordinarily, however, an affirmative defense such as the execution of a release is not appropriately considered on a motion to dismiss. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). The Fourth Circuit has held that, only "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* Importantly, the Fourth Circuit has limited this exception to instances where all facts necessary to the affirmative defense "clearly appear[] *on the face of the complaint*." *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)(emphasis added).

Here, the terms of the Release are not clear from the face of the complaint, because no specific terms are recited in the complaint and the complaint does not attach the Release. Moreover, as defendants acknowledge, a release may be invalid due to mutual mistake, fraud, misrepresentation or duress and that releases are enforced only if

6

they are knowing and voluntary. Mot. at 9 (citing *Va. Impression Prods. Co. v. SCM Corp.*, 448 F.2d 262, 265 (4th Cir. 1971); *Davis v. Old Dominion Tobacco Co.*, 755 F. Supp. 2d 682, 692 (E.D. Va. 2010)). The Fourth Circuit has held that, to fall within the limited exception of addressing an affirmative defense on a motion to dismiss, the movant cannot merely show that the elements of the defense appear on the face of the complaint but must also "show that plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Goodman*, 494 F.2d at 466. Plaintiff's complaint was not required to negate defendant's affirmative defense and the complaint does not clearly foreclose rejoinder to CFFS' affirmative defense. *See, e.g., Alexander v. UIP Property Mgmt.*, No. 14-cv-2469, 2015 WL 1472004, at *3 (D. Md. Mar. 30, 2015). Accordingly, CFFS' motion to dismiss on the basis of the Release that plaintiff signed must be denied without prejudice to CFFS raising such a defense at the appropriate time.[7]

## V.

Next, CFFS argues that plaintiff's Title VII disparate treatment claim must be dismissed. Plaintiff alleges that she was discriminated against based on her race and sex. CFFS correctly argues that plaintiff has failed to state a claim for relief under Title VII and that her disparate treatment claim must be dismissed.

---

[7] Defendant also argues that its motion may be construed as a motion for judgment on the pleadings, pursuant to Rule 12(c), Fed. R. Civ. P. Such a motion may only be brought when "the pleadings are closed." Rule 12(c), Fed. R. Civ. P. Moreover, in ruling on a motion for judgment on the pleadings, CFFS would still face the problem that its affirmative defense must be clear on the face of the *complaint. See Demetry v. Lasko Prods., Inc.*, 284 F. App'x 14, 15 (4th Cir. 2008) (applying *Goodman* standard to Rule 12(c) motion).

Title VII prohibits an employer from "discharge[ing] any individual, or otherwise .
. discriminat[ing] against any individual . . . because of such individual's race . . . [or]
sex." 42 U.S.C. § 2000e-2(a). To state a plausible claim for discrimination, a plaintiff
must allege facts to establish: "(1) membership in a protected class; (2) satisfactory job
performance; (3) adverse employment action; and (4) different treatment from similarly
situated employees outside of the protected class." *Coleman v. Md. Court of Appeals*,
626 F.3d 187, 190 (4th Cir. 2010). The Fourth Circuit has recognized that, "while a
plaintiff is not required to plead facts that constitute a prima facie case in order to survive
a motion o dismiss, factual allegations must be enough to raise a right to relief above the
speculative level." *Id.* (citations omitted). Plaintiff falls far short of meeting this
standard.[8]

To begin with, plaintiff has not alleged any adverse employment action taken by
*CFFS*. Indeed, most of plaintiff's complaint focuses on actions taken by USAID *not*
CFFS. The only actions plaintiff identifies as taken by CFFS are: (1) that plaintiff was
moved to the furthest and coldest end of the building; and (2) that plaintiff was provided

---

[8] CFFS, in footnote 2 of the motion, argues that it is the wholly owned subsidiary of Cape Fox Federal Contracting, LLC, which is in turn wholly owed by Cape Fox Corporation ("CFC"). CFFS asserts that CFC is an Alaskan Native Corporation. Pursuant to 43 U.S.C. § 1626(g), "[f]or the purposes of implementation of the Civil Rights Act of 1964, a Native Corporation and corporations, partnerships, joint ventures, trusts, or affiliates in which the Native Corporation owns not less than 25 per centum of the equity" are excluded from the definition of "employer." Yet courts have held that § 1626(g) must be narrowly construed and that "[l]imiting the scope of § 1626(g) to Native Corporation's direct subsidiaries, and subjecting Native Corporation's indirect subsidiaries to Title VII, is the statutory interpretation most faithful to § 1626(g)'s clear purpose." *Fox v. Portico Reality Servs. Office*, 739 F. Supp. 2d 912, 922-23 (E.D. Va. 2010); *see also Herndon v. Alutiiq Educ. & Training, LLC*, No. 2:16-cv-72, 2016 WL 9450429, at *5 (E.D. Va. May 6, 2016) (same). Thus, CFFS, as an indirect subsidiary of a Native Corporation, does fall within Title VII's definition of an employer and is not exempted from Title VII liability under § 1626(g).

with a "performance intervention" email. Neither of these actions constitute "adverse employment actions" under Title VII.[9]

Plaintiff's claim that her relocation to a distant and cold location in the building constitutes an adverse employment action fails. Significantly, plaintiff expressly alleges that she requested relocation because of her fear of toxins at her original location and that CFFS accommodated her by moving her to a different office space. Moreover, courts have expressly and repeatedly rejected similar claims regarding transfers to new office locations. *See, e.g, Bridgeforth v. Potter*, No. 3:10-cv-30, 2011 WL 3102422, at *13 (W.D. Va. July 25, 2011) (holding that plaintiff's testimony that "his new office location exposed him to 'lonely,' 'cold,' or 'noisy' conditions . . . do not constitute an adverse employment action").[10]

Similarly, in accordance with Fourth Circuit precedent, a "performance intervention" email does not constitute an adverse employment action.[11] Here, although

---

[9] Plaintiff does not allege that she was constructively discharged. Constructive discharge occurs "when 'an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.'" *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir. 1984) (quoting *J.P. Stevens & Co. v. NLRB*, 461 F.2d 490, 494 (4th Cir.1972)). Thus, "[a] plaintiff alleging constructive discharge must ... prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." *Bristow v. Daily Press Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985). Plaintiff alleges that she decided to resign because her PTSD was being triggered daily and because she was stressed. As discussed further in the analysis of plaintiff's hostile work environment claim, *infra*, such claims cannot form a discrimination claim under Title VII and do not establish constructive discharge under Title VII.

[10] *See also, Rock v. McHugh*, 819 F. Supp. 2d 456, 470 (D. Md. 2011) (no adverse employment action where plaintiff moved from 3-window office to shared cubicle); *Yon v. Regional Med. Ctr.*, No.5:14-cv-2098, 2016 WL 11410314, at *7, n. 14 (D.S.C. Feb. 10, 2016) (changed workspace does not amount to an adverse employment action); *c.f. Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) ("[I]t is obvious to us that there are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of . . . Title VII"); *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999) ("Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment").

[11] *See Melendez v. Bd. of Educ. for Montgomery Cty.*, 711 F. App'x 685, 688 (4th Cir. 2017) ("Melendez's placement into PIP likewise does not constitute an adverse action"); *Jensen-Graf v. Chesapeake Employer's Ins. Co.*, 616 F. App'x 596, 598 (4th Cir. 2015) (same); *Jones v. Constellation Energy Project & Servs. Grp., Inc.*, 629

9

plaintiff asserts that she perceived the performance intervention as discipline, she identified no consequence or change to the terms and conditions of her employment that flowed from her receipt of that email.[12] As the Fourth Circuit has noted, "[t]he requirement of an adverse employment action seeks to differentiate those harms that work a significant detriment on employees from those that are relatively insubstantial or trivial." *Adams*, 789 F.3d at 431. Absent an allegation that the performance intervention email had some tangible effect on her, plaintiff has failed to establish that she suffered an adverse employment action.

Even assuming, *arguendo*, that plaintiff has suffered an adverse employment action, plaintiff has not alleged any facts that she was treated differently from any similarly situated employee based on plaintiff's race or sex. Nor has plaintiff alleged that her position was filled by someone outside her protected class. Other than a conclusory assertion of her feeling that she was discriminated against based on her race, plaintiff makes no factual allegations to support her feeling and does not even allege the race of any co-worker, supervisor, or USAID employee. In short, her allegation of race discrimination is a "naked assertion[]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678. Plaintiff similarly fails to tie any action by CFFS to her sex. *See Coleman*, 626 F.3d at 191 ("Here, although [plaintiff]'s complaint conclusorily alleges

---

F. App'x 466, 468 (4th Cir. 2015) ("Jones has not demonstrated how his 'basic performance' evaluation or his placement on a PIP changed his employment status or his compensation.")

[12] *See Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015) (noting that "reprimands and poor performance evaluations . . . are much less likely to involve adverse employment actions than transfers, discharges, or failures to promote whose impact on the terms and conditions of employment is immediate and apparent").

that [plaintiff] was terminated based on his race, it does not assert facts establishing the plausibility of that allegation."). Plaintiff does not identify any comparators or allege that any person at USAID or CFFS was treated differently than plaintiff based on race or sex. *See id.* (affirming dismissal where plaintiff failed to identify plausible comparators).[13]

Plaintiff's complaint includes no factual allegations that make more than a naked allegation that she experienced race discrimination. Moreover, although plaintiff alleges facts regarding some apparently strange interactions with York (a USAID employee), plaintiff does not allege any facts demonstrating that those interactions were based on sex or that CFFS took any actions based on plaintiff's sex. Thus, none of plaintiff's allegations are "enough to raise a right to relief above the speculative level" and plaintiff's Title VII discrimination claims must be dismissed. *See Twombly*, 550 U.S. at 555.

## VI.

Although it is unclear whether plaintiff seeks to bring a hostile work environment claim under Title VII, CFFS nonetheless argues that such a claim fails on the basis that plaintiff has not alleged severe or pervasive harassment that was based on a protected characteristic. CFFS is correct. Accordingly, any hostile work environment claim under Title VII must be dismissed.

---

[13] *See also Idris v. Ratner Co./Creative Hairdressers*, No. 14-cv-1425, 2014 WL 5382633, at *3 (D. Md. Oct. 21, 2014) (dismissing where "the Complaint contains no mention of comparators of any kind"); *Spellman v. Sch. Bd. of City of Chesapeake* . No. 2:17-cv-635, 2018 WL 2085276, at *7 (E.D. Va. Apr. 5, 2018) ("Regarding this final element, Plaintiff fails to allege facts sufficient to identify even one suitable comparator.").

The Fourth Circuit has held that to state a claim under Title VII for a hostile work environment, a plaintiff must allege workplace harassment that: (1) was "unwelcome"; (2) was based on a protected characteristic (here, race or sex); (3) was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (v) was, on some basis, "imputable to the employer." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 302 (4th Cir. 2019). The Supreme Court has held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). In other words, as the Supreme Court has made clear, a hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quotation marks omitted). Here, plaintiff has not alleged any facts sufficient to allege the severe or pervasive harassment necessary to state a plausible hostile work environment claim.

To begin with, as noted above, plaintiff makes no allegations that she was subject to any objectionable conduct because of her race; instead, she merely alleges that she is white and that she experienced "minority-centric cliques." Such allegations are insufficient to allege a hostile work environment. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315-16 (4th Cir. 2008) (holding that "complaints premised on nothing more than 'rude treatment by [coworkers],' 'callous behavior by [one's] supervisors,' or 'a

12

routine difference of opinion and personality conflict with [one's] supervisor' are not actionable under Title VII").[14]  This allegation is not sufficient to show severe or pervasive harassment.  Moreover, such bare-bones allegations are insufficient to establish that the workplace was permeated with discriminatory intimidation.  *See, e.g., Skipper v. Giant Foods Inc.*, 68 F. App'x 393, 398 (4th Cir. 2003) (allegations of thirteen usages of racial slurs and the existence of racist graffiti in the workplace insufficient to establish a hostile work environment).  Accordingly, to extent plaintiff seeks to state a claim for a hostile work environment based on race, her claim must be dismissed.

Any claim for a hostile work environment based on sex is similarly inadequate, conclusory, and deficient.  Although plaintiff alleges various strange statements by York and difficulty working with York, Reid, Prout, and Price-Dethrege, plaintiff has pleaded no facts to suggest that those interactions were motivated by her sex.  *See Coleman v. Pentagon Fed. Credit Union*, No.17-cv-18, 2017 WL 1044693 at *4 (E.D. Va. Mar. 17, 2017) (dismissing hostile work environment claim where "nothing inherently sexual" about interactions and plaintiff failed to allege facts to show interactions motivated by sex).  Plaintiff's allegations about York are "so trivial, so isolated, and so far from the paradigmatic case of sexual harassment."  *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 773 (4th Cir. 1997) (where plaintiff alleged that co-workers were "at times difficult to work with, insensitive, immature, and even insulting").  CFFS correctly argues that the facts alleged by plaintiff and assumed to be true, allege nothing more than a "workplace

---

[14] *See also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) ("[R]udeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim.").

dispute" and "some perhaps callous behavior by her superiors." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Accordingly, plaintiff has failed to state a hostile work environment claim based on sex.

In short, although plaintiff's complaint alleges "problems she experienced with her co-workers and supervisors," these allegations "do not seem to have anything to do with gender [or] race . . . harassment" and thus fail to state a claim under Title VII. *Bass*, 324 F.3d at 765. Plaintiff has therefore failed to state a claim for relief and Title VII hostile work environment claim must be dismissed.

## VII.

CFFS next argues that plaintiff has failed to state a Title VII retaliation claim, because she has not alleged facts to support a causal connection between any protected activity and any alleged adverse employment action. CFFS is correct. Accordingly, plaintiff's Title VII retaliation claim must be dismissed.

To state a claim of retaliation, a plaintiff must show: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection existed between the protected activity and the asserted adverse employment action. *See King v. Rumsfeld*, 328 F.3d 145, 150-51 (4th Cir. 2003).

To begin with, as discussed *supra* Section V, plaintiff has failed to allege that she suffered an adverse employment action. Neither plaintiff's office relocation nor the performance intervention email qualify as an adverse employment action. Moreover, plaintiff's other allegations regarding work-related criticism and scrutiny also do not rise

to the level as an adverse employment action because they are not alleged to have affected the terms and conditions of her employment.[15]

Moreover, plaintiff fails to allege a causal connection between any action taken by CFFS after plaintiff engaged in a protected activity of which CFFS was aware. Plaintiff alleges that she made several complaints to USAID regarding alleged discrimination, but plaintiff fails to allege that CFFS was aware of those activities.[16] In mid-May, plaintiff complained to Brown about York and about the alleged race discrimination plaintiff suffered. Before her complaint to Brown, plaintiff alleges that she had already had her office relocated, was not invited to meetings, and was being isolated from her team. Because these alleged acts took place *before* the only protected activity of which plaintiff alleges CFFS was aware, plaintiff cannot establish the causal nexus necessary to state a claim for Title VII retaliation. *See Byers v. HSBC Fin. Corp.*, 416 F. Supp. 2d 424, 438 (E.D. Va. 2006) (holding that a plaintiff "must show that the adverse employment action took place after the protected activity and because of the protected activity") (citing *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 651 (4th Cir. 2002) and *Dowe v.*

---

[15] *See Thompson v. Potomac Elec. Power, Co.*, 312 F.3d 645, 651 (4th Cir. 2002) (holding that disciplinary discussions that did not result in lost pay or positions failed to show discrimination, even if different from other employees); *Simms v. Navy Fed. Credit Union*, No.02-cv-900, 2002 WL 32971969, at *4 (E.D. Va. Aug. 27, 2002) ("[N]either the alleged reprimand nor the alleged criticism is an adverse employment action"); *Dawson v. Rumsfeld*, No.05-cv-1270, 2006 WL 325867, at *6 (E.D. Va. Feb. 8, 2007) ("Increased scrutiny of an employee under the general policies and disciplinary procedures governing her employment is therefore not an adverse employment action.").

[16] In order to establish retaliation based on discrimination, a plaintiff must allege that the defendant was aware of the protected activity. *See Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (affirming dismissal of retaliation claim where plaintiff failed to allege "that any of his supervisors responsible for the alleged discrimination knew that he was claiming discrimination based on a protected status"); *Mohammed v. Cent. Driving Mini Storage, Inc.*, No. 2:13-cv-469, 2015 WL 3607527, at *10 (E.D. Va. June 5, 2015) ("[A] plaintiff must show that the employer was aware of the protected activity").

*Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)). Plaintiff also fails to allege that the performance intervention email – the only new act which plaintiff alleges occurred *after* her complaint to Brown – was in retaliation for or had anything to do with her May 2018 complaints.

In short, plaintiff has failed to allege any facts to support a Title VII retaliation claim. Accordingly, her Title VII retaliation claim must be dismissed.

## VIII.

With respect to plaintiff's failure to accommodate claim, CFFS argues that this claim should be dismissed because plaintiff has failed to show that her requested accommodation was reasonable and because plaintiff has failed to allege that she requested any accommodation specifically for her PTSD. CFFS has again correctly pointed out the flaws in plaintiff's complaint. Plaintiff fails to show both that her requested accommodation was reasonable and that her requested accommodation was related to her alleged disability. Accordingly, her failure to accommodate claim must be dismissed.

The ADA prohibits discrimination in employment decisions against "individual[s] on the basis of disability." 42 U.S.C. § 12112(a). Plaintiff has alleged that she is disabled within the meaning of the ADA because she has PTSD. Plaintiff asserts that the CFFS failed to accommodate her request to move herself and her team to a different building. To state a claim for a failure to accommodate under the ADA, a plaintiff must allege facts to permit a reasonable inference: (1) that plaintiff had a disability within the meaning of the ADA; (2) that CFFS had notice of her disability; (3) that with a reasonable

accommodation plaintiff could perform the essential functions of her job; and (4) that CFFS refused to make such accommodations. *See Haneke v. Mid-Atl. Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005).

Plaintiff requested that CFFS move not just plaintiff, but her *entire team* to different location.[17] Courts have held that similar requests are unreasonable as a matter of law.[18] Moreover, courts have held that physical attendance in the workplace is an essential requirement of the job.[19] Here, plaintiff does not merely seek an accommodation for herself, but seeks a relocation of her entire team – an unspecified number of people – including persons not employed by CFFS, but by USAID. Such a request is plainly unreasonable.

Moreover, plaintiff states that she requested that her team be transferred to "a building where the toxins would not affect me." Compl. at III.E.2. But plaintiff herself recognizes, in her opposition to the motion to dismiss, that she does "not know what causes the triggers." Opp'n at 2. Plaintiff has not alleged any facts from which it may be

---

[17] Additionally, plaintiff's complaint and attached documents demonstrate that CFFS did attempt to work with plaintiff and accommodate her. CFFS relocated plaintiff's office and permitted her to work from home one day per week.

[18] *See, e.g., Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 581 (3d Cir. 1998) (employee's proposed accommodation, transfer away coworker's stress, unreasonable as a matter of law); *Alsup v. U.S. Bancorp*, No. 2:14-cv-1515, 2015 WL 224748, at *7 (E.D. Cal. Jan. 15, 2015) (noting that "a transfer is unreasonable as a matter of law"); *Pritchard v. Dominguez*, No. 05-0040, 2006 WL 1836017, at *13-14 (N.D. Fla. June 29, 2006) (requested transfer accommodation under a different supervisor unreasonable as a matter of law); *Ozlek v. Potter*, No. 05-0257, 2006 WL 964484, at *5 (E.D. pa. Apr. 13, 2006) (plaintiff's only requested accommodation, transfer to position outside of his management team, not reasonable); *Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 948 (N.D. Ga. 1995) ("[p]laintiff's request to accommodate . . . disability [by transfer] is unreasonable and not a reasonable accommodation under the ADA as a matter of law").

[19] *See, e.g., Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 114, 119 (10th Cir. 2004) (collecting cases); *Hypes v. First Commerce Corp.* 134 F.3d 721, 727 (5th Cir. 1998) (per curiam); *cf. Tyndall v. Nat'l Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir. 1994) ("a regular and reliable level of attendance is a necessary element of most jobs").

determined that, if CFFS had granted her requested accommodation, plaintiff would have been able to perform the essential functions of her job. *See Zaffino v. Metro. Govt. of Nashville & Davidson Cnty., Tenn.*, 688 F. App'x 356, 359 (6th Cir. 2017) ("[W]e recognize that the ADA's requirement to accommodate extends only as far as reasonably necessary to allow qualified, disabled individuals to perform the essential functions of a job."). Here, plaintiff does not allege that moving buildings was necessary to permit her to perform the essential functions of her job. Nor can plaintiff make such an allegation where she concedes that she does not know what triggers her PTSD.

Finally, plaintiff has not alleged facts demonstrating that, when making the request that she and her team move to another building, she put CFFS on notice that she needed this reasonable accommodation *for her disability*. Instead, plaintiff alleges that she requested that she and her team be moved because of her fears of toxins in the air. *See* Compl. III.E.2. Indeed, plaintiff's request, on its face, appears unconnected from her disability, which she identifies as PTSD. *See Parkinson v. Anne Arundel Med. Ctr.*, 79 F. App'x 602, 605 (4th Cir. 2003) (finding no request for accommodation where "it would have been far more reasonable for appellees to have understood his request not to work overtime to have been made for an entirely unrelated reason . . .").[20] Nor does plaintiff

---

[20] *See Dinse v. Carlisle Foodservice Prods. Inc.*, 541 F.App'x 885, 892 (10th Cir. 2013) (no failure to accommodate where request for laptop was unrelated to plaintiff's disability); *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003) ("Where the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie."); *Buckley v. Consolidated Edison Co. of N.Y., Inc.*, 155 F.3d 150, 157 (2d Cir. 1998) ("Accordingly, the regulations and the EEOC Guidelines instruct employers to make accommodations for the disability or limitations resulting from the disability, not for other unrelated conditions.")

allege that, at the time she made the request for an accommodation, CFFS was aware of her PTSD.

In summary, plaintiff has failed to state a claim for failure to accommodate her PTSD. In this respect, plaintiff has not alleged facts sufficient to show: (i) that her requested accommodation was reasonable; (ii) that the requested accommodation would permit her to perform the essential functions of her job; or (iii) that her requested accommodation was related to her PTSD. Accordingly, plaintiff's failure to accommodate claim must be dismissed.

## IX.

CFFS also argues that plaintiff has not stated a claim for disability discrimination under the ADA. To establish a claim for disability discrimination, a plaintiff must allege (1) that she has a disability, (2) that she is a "qualified individual" for the employment in question, and (3) that CFFS took an adverse employment action against her "because of her disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). Plaintiff's claim fails because, as discussed *supra* in Section V, CFFS did not take any adverse employment action against her. Moreover, even assuming that plaintiff suffered an adverse employment action, plaintiff cannot show that any action was taken because of her disability. Accordingly, plaintiff's claim for disability discrimination under the ADA must be dismissed.

As established in Section V, plaintiff has not alleged that she suffered an adverse employment action. Yet, even assuming that plaintiff has alleged that she suffered an adverse employment action, plaintiff has not alleged that CFFS took any action against

19

her *because of her* disability. The only disability that plaintiff has identified is her PTSD.[21] Indeed, the only facts that plaintiff alleges about CFFS and her PTSD relate to CFFS attempts to accommodate her by permitting her to change offices and to occasionally work from home. Plaintiff does not allege any facts from which an inference of disability discrimination can be drawn.[22] Accordingly, plaintiff's ADA discrimination claim must be dismissed.

## X.

For many of the same reasons discussed in Section VI, CFFS argues that plaintiff has failed to allege a plausible claim that she suffered a hostile work environment based on her PTSD. To state a claim for a hostile work environment under the ADA, plaintiff must allege facts that show

> (1) [she] is a qualified individual with a disability; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term condition, or privilege of employment; and (5) some factual basis exists to impute the harassment to the employer.

---

[21] Although plaintiff makes some vague references to an allergy to mold, plaintiff does not identify this allergy as a disability. *See* Compl. III.D. ("disability or perceived disability (*specify disability*): Post Traumatic Stress Disorder"); *see also Lewis v. UPS Freight*, No. 3:10-cv-29, 2010 WL 1640270, at *3 (E.D. Va. Apr. 22, 2010) (plaintiff must specifically state the nature of his or her disability). Moreover, the EEOC Charge of Discrimination does not mention allergies as a potential disability.

[22] *See Sharma v. Howard Cnty.*, No.12-cv-2269, 2013 WL 530948, at *6 (D. Md. Feb. 12, 2013) (dismissing complaint where plaintiff "fails to allege any additional facts to support the inference that he was terminated because of his disability"); *Wilson v. Daly Seven, Inc.*, No.5:15-cv-610, 2018 WL 1800853, at *5 (E.D.N.C. Apr. 16, 2018) (dismissing complaint where "plaintiff has not alleged any facts permitting an inference that defendant" acted "because of plaintiff's disability").

*Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001). Plaintiff has failed to allege facts sufficient to show that she suffered severe or pervasive harassment based on her PTSD. Accordingly, her ADA hostile work environment claim must be dismissed.

As with Title VII, the ADA is not a "general civility code" and "mere insensitivity," "moderately offensive remarks," or personality conflicts cannot support a hostile work environment claim. *See Rozier-Thompson v. Burlington Coat Factory Warehouse of Pocono Crossing, Inc.*, No. 3:05-cv-456, 2006 WL 1889651, at *6 (E.D. Va. July 7, 2006) (citing *Fox*, 247 F.3d at 179). Here, plaintiff complains that her co-workers excluded her, that she was teased about not being included in meetings, and that she was subjected to additional review. This behavior plainly does not rise to the level of repugnance which is required to state a claim for a hostile work environment under the ADA.[23]

Additionally, plaintiff does not allege that any unwelcome conduct that she experienced was the result of her disability. To the contrary, plaintiff's opposition brief makes clear that her hostile work environment is premised on the "higher degree of stress" that she experienced which "subsequently aggravated my PTSD disability." Opp'n at 5. Indeed, it would be stretch to characterize what plaintiff experienced as harassment. *See Spida v. BAE Sys. Info. Solutions, Inc.*, No. 1:16-cv-979, 2016 WL 7234088, at *7 (E.D. Va. Dec. 14, 2016) ("She does not allege any threats, disparaging comments, physical contact or verbal abuse of any kind, must less harassment based on

---

[23] *See also Hopkins v. Baltimore Gas & Elec. Cor.*, 77 F.3d 745, 753 (4th Cir. 1996)(finding that a working environment must be "hostile or deeply repugnant," not "merely unpleasant" to be actionable).

her . . . disability."). Moreover, courts dealing with allegations of a hostile work environment based on PTSD and similar factual allegations have rejected such claims. In *Lopez v. Lopez*, 997 F. Supp.2d 256 (D.N.J. 2014), the plaintiff suffered from PTSD and had trouble with supervisors taunting him and scheduling time off. The district court held that:

> "Plaintiffs issues or conflicts with Defendant Lopez are run-of-the-mill personality and administrative conflicts. True, Plaintiffs [sic] psychological condition might have made it more difficult for him to negotiate these routine workplace frustrations. That does not equate to Defendants' creation of a hostile environment based on his disability."

*Id.* at 275. Similarly, here, while plaintiff may have had difficulties navigating the every-day workplace conflicts she experienced, that does not transform her experience into discrimination on the part of CFFS. Accordingly, plaintiff's ADA hostile work environment claim must be dismissed.

## XI.

Finally, CFFS argues that plaintiff has failed to state a retaliation claim under the ADA. Plaintiff alleges that CFFS retaliated against her based on her complaints of disability discrimination. To establish a claim for retaliation under the ADA, a plaintiff must establish (1) she engaged in protected conduct, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected conduct and the adverse employment action. Plaintiff has failed to allege facts supporting a ADA retaliation claim; accordingly, that claim must be dismissed.

As discussed *supra* in Section V, plaintiff has failed to allege that she suffered an adverse employment action. Accordingly, she cannot state a claim for retaliation under

the ADA. Plaintiff also fails to allege facts sufficient to show that a causal link exists between any action taken by CCFS and a protected activity under the ADA. Plaintiff must allege that she engaged in protected activity based on behavior that she reasonably believed violated the ADA. *See Frelich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002). The only protected activity that plaintiff may reasonably allege in which she engaged under the ADA was her request for an accommodation. Plaintiff specifically alleges that her requested accommodation related to her fear of toxins in the building and not her PTSD. Accordingly, even assuming that plaintiff suffered an adverse employment action her ADA retaliation claim must be dismissed.

## XII.

Defendants request that plaintiff's entire complaint be dismissed with prejudice. As discussed *supra*, plaintiff has failed to state any claim. Accordingly, her complaint must be dismissed. The question remains, however, whether any portion of the complaint should be dismissed with prejudice. Because the parties agree that plaintiff may not sue the Individual Defendants, it is clear that amending those claims would be futile and that they should be dismissed with prejudice. The parties do not address whether amendment of any of plaintiff's other claims would be futile. Plaintiff is *pro se* and, because her claims against CFFS may potentially be cognizable, she should be afforded an opportunity to amend. *See King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016) (holding that, where there was no discussion of futility, "dismissal should generally be without prejudice"). Accordingly, plaintiff will be permitted to amend her claims against CFFS.

Plaintiff is strongly encouraged to retain counsel to represent her in this case, because federal court litigation is difficult to pursue without legal training. Moreover, some of her claims, should she prevail on the merits, include the right to recover attorney's fees. In any event, plaintiff must file any amended complaint by **Tuesday, February 18, 2020,** thirty days after the entry of this Memorandum Opinion.

An appropriate order will issue separately.

The Clerk is directed to provide a copy of this Memorandum Opinion to plaintiff at her address of record and to all counsel of record.

Alexandria, Virginia
January 17, 2020

/s/

**T. S. Ellis, III**
**United States District Judge**